' GRIFFITH
   vs
DICKEN.

*L. Hord* for plaintiff.

---

ÉJECTMENT.

*Case 8.*

October 13.

The case stated.

# Griffith *vs* Dicken.

APPEAL FROM THE HOPKINS CIRCUIT.

*Presumptions. Possession. Champerty. Evidence.*

JUDGE MARSHALL delivered the Opinion of the Court.

THIS case was formerly before the Court, and the opinion reported in *4th Dana, p.* 561, is referred to for a general statement of the matters in controversy.

Several demises having been stricken from the declaration, the plaintiff's claim now stands upon the separate demises of Walter Baker, the patentee of two-thirds of 1500 acres, including the land in contest, and Remus Griffith claiming 500 acres of the 1500 by deed from the heirs of Charles Travis, to whom John Dicken, the co-patentee of one third of the 1500 acres, had conveyed 500 acres thereof by metes and bounds in the year 1800, shortly after the patent issued.

The evidence upon the last trial conduces to prove that as early as the year 1800, and at the date of John Dicken's deed to Travis, Travis and James Jordan were in possession of different portions of the 500 acres, and that Travis and, after his death, his heirs continued in possession of their portion, and Jordan and those claiming under him, continued in possession of the residue until the fall of 1810, when Christopher Dicken, the present defendant, entered upon the whole 500 acres, claiming by purchase from Jordan, from whom he received a deed in November of that year.

One witness fixes the 14th of October, 1810, as the day on which Christopher Dicken first took possession.

The declaration was served on the 12th of October, 1830.

It does not appear explicitly in what manner Jordan, and those coming in under him, held the possession prior to the deed of November, 1810, from him to the defen-dant. But one of the instructions given by the Court refers to a commissioner's deed and sheriff's deed, as pur-porting to convey the land to Jordan, but neither of them is contained in the record, and a record from the County Court, read in evidence by the defendant, shows that in November, 1810, an order was made for the conveyance of land, by commissioners, to Jordan, in pursuance of a bond from Travis, alleged to have been produced.

These and other circumstances tend strongly to the conclusion that Jordan claimed under Travis' title, and that he did not obtain any transfer of that title under his bond until after the order of the County Court above re-ferred to. And no commissioners or sheriffs deed ap-pearing in the record, nothing is to be presumed in re-gard to the date or validity of either of them.

Assuming then that so far as Jordan claimed the land, up to November, 1810, he claimed under Travis' title, looking to his heirs for a conveyance, there was of course no possession adverse to that title until within twenty years be-fore the commencement of this suit—and this would be the result even if the adverse possession could be regard-ed as commencing with the entry of C. Dicken, on the 14th of October, 1810. The statute of limitations there-fore, upon either of these assumptions, furnishes no bar to a recovery on the demise of Griffith, so far as he is invest-ed with the title of Travis' heirs. And if, as we think is the case, Baker's right of entry is barred by the thirty years possession held under the deed of his co-patentee, John Dicken, the bar enures to the benefit of that deed and of the rightful claimant under it, and not in favor of a defendant who is neither invested with that title nor shows such a continued adverse possession as will bar it. It is true that after Christopher Dicken had conveyed 250 acres of the 500 to John Dicken, one of the original patentees, J. Dicken re-conveyed the same 250 acres, and also transferred his entire interest in the 1500 acres to C.

Dicken. But this conveyance conferred upon C. Dicken no other title in the 500 acres than he had before; for John Dicken had previously conveyed all his interest therein to Travis; and although the deed was not recorded the facts authorize the assumption that C. Dicken had full notice of it.

It is obvious from this general view of the attitude of the parties, that in the absence of any other title but that derived under the patent of Baker and Dicken, the plaintiff, if Baker's right of entry was barred, was entitled to recover under the demise from Griffith, the whole 500 acres which had been conveyed to Travis, so far as the defendant, C. Dicken, was in possession thereof, if the deed from Travis' heirs to Griffith was effectual and to the extent that it was effectual to transfer their title to the grantee, unless there had been a previous transfer of that title, or unless there had been twenty years possession adverse to it before the commencement of this suit, and of which the defendant could avail himself against the grantee of Travis' heirs, and if Baker's right of entry was not barred, the plaintiff had a right to recover on the demise from him two thirds of the land in possession of the defendant, and the recovery under the other demise, subject to the conditions above stated, would be proportionably limited.

Upon several of these points on which the right of recovery might depend, instructions were given by the Court on the defendant's motion, the propriety of which is questioned, and will be briefly considered.

The law will not presume a deed from an elder patentee to one who has been in possession for 20 years, unless there be some proof of an existing obligation to convey.

1st. The defendant having read in evidence a patent older than that of Baker and Dicken and which covers the 500 acres in contest; the Court, on his motion, instructed the jury to the effect that if the defendant, and those under whom he claims, had been in possession of the land, claiming it as their own for more than 20 years prior to the commencement of the suit, they might presume a conveyance of the title under both patents to the defendant. Upon this instruction it is to be remarked in the first place, that twenty years possession is not always a sufficient ground for presuming a deed unless from a party who was previously under some obligation to make it,

otherwise this presumption would defeat a writ of wright in every case in which twenty years possession would defeat an ejectment, and the additional time given for bringing the former action would be an unsubstantial privilege.   But as twenty years possession adverse to the title of the plaintiff would bar the right of entry and thus defeat his action of ejectment, whether a conveyance should or should not be presumed, this inaccuracy might not be deemed very material if the presumption had been based upon the hypothesis that there had been a possession of twenty years adverse to the title of Travis and his heirs.   But as the evidence conduces to prove that the possession was held under that title until within less than twenty years before the suit was brought, the instruction as given enables the defendant to rely upon Travis' own possession in making out the bar to a recovery on Travis' title, which is manifestly unreasonable and unjust. ‹

The Court therefore erred, and to the prejudice of the plaintiff, in giving this instruction.

2nd.  The defendant objected to the deed from Travis' heirs to Griffith, which bears date in October, 1824, as being champertous and void, in consequence of his adverse possession of the land attempted to be conveyed. And this Court having decided, in the opinion formerly rendered, that this objection could not prevail in regard to the 250 acres conveyed by C. Dicken to John Dicken and afterwards re-conveyed, the instruction on this subject at the last trial was confined to the other 250 acres, and was to the effect that the deed was champertous and therefore void under the act of 1824, as to the last named 250 acres, if at the time of its execution the defendant was in the adverse possession of said 250 acres.   This instruction was erroneous because it excluded from the consideration of the jury the evidence on the part of the plaintiff, which conduced to prove that the deed was in part executed by all of the grantors except one, in June, 1824, before the champerty act of that year took effect; and as to the grantors who executed it at that time, it was valid and effectual to pass the title.

GRIFFITH
vs
DICKEN.

A decree of conveyance, from several grantors, dated and executed before the champerty act of 1824 took effect, and executed by part of the grantors, is valid, and effectual to pass the right of such as may have executed it.

GRIFFITH
vs
DICKEN.

A conveyance of
land adjacent to
other lands, of
which one is in
the actual pos-
session, will give
a constructive
actual posses-
sion of the part
so conveyed,
where there is no
adversary in pos-
session, which
will warrant e-
jectment there-
for, against such
possessor.

3rd. A third instruction given on motion of the defen-
dant denies the plaintiff's right to recover the 250 acres,
which had been conveyed by C. Dicken to John Dicken,
unless the jury should believe, from the evidence, that the
defendant was in the actual possession and occupancy
thereof at the commencement of the suit. And although
this instruction seems to be abstractly correct, we think
it was erroneous and misleading, inasmuch, as the same
250 acres having been re-conveyed by John Dicken to the
defendant while the latter was in possession of the adjoin-
ing 250 acres, and no other person was in possession of
the land thus re-conveyed, his possession extended, by
construction of law, so as to include the adjoining land
thus re-conveyed. And this possession still existing was
sufficient, even waiving the proof of actual occupancy or
enjoyment, to authorize the recovery of that part of the
land.

A continued ad-
versary posses-
sion of 20 years
bars an eject-
ment.

4th. A fourth instruction relating also to the 250 acres
last mentioned was, in our opinion, erroneous; because it
assumes that the possesion of that part of the land was
not such as to bar the right of entry under the elder
patent before referred to, when the evidence conduced to
prove and authorize the jury to find that there had been a
continued possession thereof, adverse to the said patent
from the year 1800, for more than twenty years, and in
fact up to the commencement of this suit.

To instruct the
jury "that the
plaintiff in eject-
ment ought not
to recover on a
doubtful title;"
nothing further
saying, is im-
proper, the jury
have the right in
ejectment, as in
other cases, to
weigh probabili-
ties, and solve
doubts as to mat-
ters of fact.

5th. The instruction that "the plaintiff in ejectment
ought not to recover on a doubtful title," seems calculated,
without further explanation, rather to mislead than to
enlighten a jury; who undoubtedly have a right in eject-
ment, as in other cases, to weigh probabilities and solve
doubts as to matters of fact. If, in their opinion, the
preponderance of proof or of rational inference as to any
fact on which the title depends be not on the side of the
plaintiff, they ought not to find for him. And in this
sense only, is the proposition true or safe as an instruc-
tion to a jury.

6th. The sheriff's deed to Calhoun, purporting to con-
vey the title of the defendant, seems to us to have been
entirely irrelevant, but it was not void, although the land
had not been valued. And the Court did not err in re-

fusing to instruct the jury that it was void on that account. Nor do we presume any other error, prejudicial to the plaintiff, in the opinions of the Court given in the progress of the trial. But for the errors which have been pointed out, the judgment is reversed and the cause remanded for a new trial, in conformity with this and the former opinion rendered in this case.

*Morehead & Reed* for appellant; *Harlan* for appellee.